**Hillary BROWNING and Van Meyers,
Appellants,**

**v.**

**Elizabeth CALLISON, Appellee.**

Court of Appeals of Kentucky.

Feb. 21, 1969.

Roy E. Tooms, Jr., Brown, Tooms & Helton, London, for appellants.

H. F. White, James W. Smith, Elizabeth Gillis, Smith & Gillis, Middlesboro, for appellee.

MILLIKEN, Judge.

This case involves a collision between a private automobile and a taxicab at the intersection of Cumberland Avenue and Twenty-fourth Street in the city of Middlesboro on a clear, dry mid-Saturday afternoon in November 1965.

Cumberland Avenue is a paved through or favored highway, sixty-feet wide, running east and west which was marked for angle parking into its curbs, and Twenty-fourth Street is a paved, forty-foot wide highway, running north and south, with metal stop signs at its intersection with Cumberland Avenue. The Oldsmobile automobile in which the appellee, Elizabeth Callison, was a passenger in the front seat, was driven north by her husband, Joe Callison, and the taxicab of the appellants was proceeding west on Cumberland Avenue. The accident happened in the northeast quadrant of the intersection and Mrs. Callison was severely injured. The jury found the drivers of both vehicles were negligent, but awarded Mrs. Callison $4,000.00 for her

injuries in her action against the driver and owner of the taxicab, and judgment was entered accordingly. The appellants contend that no negligence on their part was established; that the evidence offered was as consistent with lack of negligence on their part as it was with negligence; that the negligence of Joe Callison was the sole cause of the accident and that Mrs. Callison was contributorily negligent as a matter of law.

The Callisons were on their way from Knoxville to their home in Middlesboro and drove down a side street paralleling Cumberland Avenue to Twenty-fourth Street in order to avoid crossing the crowded business area of the city. They testified that as they approached Cumberland Avenue and came to a stop at its southerly intersection with Twenty-fourth Street there were no cars parked at the intersection and that Joe Callison had a clear view of Cumberland Avenue, both east and west. They stated that they waited at the intersection for several cars moving eastwardly along Cumberland Avenue to pass, and that they started to cross the intersection after the only car observed approaching them from the east on Cumberland Avenue signaled for a left turn into a Kroger Store parking lot about three-hundred and fifty feet east of them. When they had reached a point in the intersection close to the north curb of Cumberland Avenue appellant's taxicab struck their car on its right side knocking their Oldsmobile approximately twelve feet in a westerly direction. The impact jammed the doors on the right side of their car and severely injured Mrs. Callison who had to be removed through the left front door.

At the outset we wish to point out that we are not directly concerned with the question of Mr. Callison's negligence. He did not appeal, so we assume that he was negligent. Neither are we concerned with the degree of negligence as between Mr. Callison and Van Meyers. Instead, we are concerned only with whether the evidence supports the verdict, or stated another way, whether the evidence and reasonable inferences flowing from it tend to establish the causative negligence of Van Meyers, and the absence of contributory negligence of Mrs. Callison.

Neither Mr. nor Mrs. Callison recalls seeing Van Meyers until the impact. On the other hand, Van Meyers testified that he was approaching the intersection at fifteen to sixteen miles per hour, and did not see the Callisons until he was six to eight feet from the intersection, that he then immediately applied his brakes but could not avoid the collision. The passengers in Van Meyers' taxicab testified that Van Meyers was traveling about twenty miles per hour as it approached the intersection and also that there had been a car in front of them which had turned into Kroger's. Appellant, Browning, who arrived at the scene eight to ten minutes after the accident testified that Van Meyers had laid down seven feet of skid marks before the collision, while a local patrolman who investigated the accident testified he saw no skid marks from Van Meyers' car.

Since the first three of appellants' arguments pertain to the negligence, if any, of Van Meyers, we shall treat all three questions as one. In short, we conclude that from the evidence and reasonable inferences flowing from it, a question as to the possible negligence of Van Meyers was raised and thus properly submitted to the jury for its determination and therefore, a directed verdict for appellants would have been error. We are not able to say that the evidence and reasonable inferences flowing from it are so one-sided as to prohibit a finding of negligence against Van Meyers. For example, in Metcalfe v. Hopper, Ky., 400 S.W.2d 531, at page 534, we said that:

" * * * It is true that Metcalfe, (car on superior highway), had a right to assume that Hopper, (car on inferior highway), would yield the right of way— but that assumption vanished when he observed (or in the exercise of ordinary care should have observed) Hopper fail to yield. *At that point* Metcalfe was

*charged* with affirmative knowledge that Hopper was not yielding. Did he then exercise ordinary care to avoid the accident? Is the evidence so one-sided as to preclude any other reasonable conclusion?" (Parentheses and emphasis ours.)

And in Tilford v. Garth, Ky., 405 S.W.2d 6, a case which is not controlling upon the case at bar, but in which we further explained the doctrine announced in Metcalfe, supra, we stated at page 8 of 405 S.W.2d that:

"* * * if the motorist on the inferior road has plenty of time and opportunity to see the vehicle on the superior way and to observe the rapidity with which it is approaching, then in the absence of some special exculpatory circumstance he cannot get hit without being careless. *Whether that carelessness is the only proximate cause depends on whether the other driver had reasonable time and opportunity to avoid the collision after he is able to apprehend the negligence of the first motorist."* (Emphasis ours.)

■ We conclude that the Metcalfe doctrine is applicable here. There the evidence was that Metcalfe, the driver on the superior highway, was at least 450 feet away when the car from the inferior one actually entered into the former's driving lane. In the case at bar, there was testimony that Mr. Callison looked east on Cumberland for a distance of from 350 to 450 feet and saw nothing before entering the intersection except the car turning into Kroger's parking lot. He then proceeded "slowly" across approximately fifty feet of sixty-foot Cumberland Avenue before being hit on the right rear door of his car. This, coupled with Van Meyers' testimony that he (Van Meyers) was proceeding at fifteen to sixteen miles an hour and did not see Callison until the latter was six to eight feet in front of him, lends some support to the belief that Van Meyers was negligent in failing to keep a proper lookout ahead and to act properly after he saw or should have seen that Callison was nearly across the sixty-foot highway. At least, this sufficiently raised a question for the jury to determine and was not so one-sided a situation as to furnish the grounds for a directed verdict for the appellants. Finally, in such cases as Couch v. Hensley, Ky., 305 S.W. 2d 765, Vaughn v. Jones, Ky., 257 S.W.2d 583, Chambliss v. Lewis, Ky., 382 S.W.2d 207, Riggs v. Miller, Ky., 396 S.W.2d 69, and Davidson v. Davidson, Ky., 412 S.W. 2d 221, under the particular facts of each case, the speed and proximity of the vehicle on the superior highway when the other entered made it obvious that the driver with the favored right-of-way did not have the time or opportunity to avoid the collision. Here, we have no such obvious conclusion; here we can well wonder not only why Van Meyers could have failed to see the Callison car nearly through the intersection but why Van Meyers could not have avoided the collision for there was no other westbound traffic to keep him from veering his car to the left in the westbound lane or lanes still available to him.

In reaching the conclusion that a jury question was raised in the case at bar we are not unmindful of cases like Chambliss v. Lewis, above, where we reversed the judgment and sustained a motion for a directed verdict for the motorist on the favored highway because the evidence clearly indicated that the motorist on the lesser highway had seen the approaching car on the favored highway and deliberately pulled out in front of him. In Chambliss there were three apparently disinterested witnesses who saw the car on the lesser highway fail to stop at the intersection and pull out in front of the approaching car on the favored highway, too late for the latter to avoid the collision. We have no such clear-cut situation in the case at bar, and thus cannot conclude that the driver of the car on the favored highway was absolved from negligence as a matter of law.

Appellants' final argument states, in essence, that even if Van Meyers was negligent, which appellants do not concede, Mrs. Callison was guilty of negligence and is

thus barred from any recovery. While it is true that Mrs. Callison and her husband both looked to their right or eastwardly along Cumberland Avenue and both saw the one approaching car approximately 350 feet away signal a left turn into the Kroger parking lot, we cannot conclude from that that she had a continuing duty to look eastward to her right, and apprise her husband of any other car approaching from the right. After all, it was he who was operating the Oldsmobile and it was his statutory duty to make such an observation and to operate his car accordingly, and there is no direct evidence that he relied on her to do the watching for the two of them for cars approaching from the right.

The motorist on the favored highway is favored, but he is not absolved from keeping a lookout ahead to see if another vehicle is in or about to enter an intersection; he may assume ordinarily that non-favored travelers will yield the right-of-way, but there is a point in time and circumstance when a favored motorist is no longer warranted in indulging such an assumption and, if that issue is presented, a jury question also is presented. The failure of the taxi driver to see the Callisons in the intersection may not of itself be negligence, but it is evidence of the degree of care exercised by the taxi driver, and thus presents a jury question. 8 Am.Jur.2d, Automobiles and Highway Traffic, Section 736. Even the reasonable rate of speed the taxi driver was traveling is open to the inference that he had plenty of opportunity to avoid the collision had he been keeping a proper lookout ahead.

The judgment is affirmed.

HILL, PALMORE, STEINFELD and REED, JJ., concur.

MONTGOMERY, C. J., and OSBORNE, J., dissent.